**THOMAS et al. v. GULF BANANA DISPATCH CO.**

No. 3374.

Court of Civil Appeals of Texas. Amarillo.

March 12, 1930.

Rehearing Denied April 16, 1930.

Harry Bunnenberg and McDonald & Anderson, all of Wichita Falls, for appellants.

Fitzgerald & Hatchitt, of Wichita Falls, for appellee.

RANDOLPH, J.

This suit was filed by the Gulf Banana Dispatch Company, hereinafter called plaintiff, against J. J. Thomas, alleged to be doing business under the name and style of Thomas Fruit Company, and the City National Bank, hereinafter styled defendants. From a judgment in favor of the plaintiff, the defendants have appealed to this court.

The plaintiff instituted this suit to recover the sums of $497.43 and $383.50 claimed to be due and owing it for two cars of bananas, numbered respectively IC-58041 and NRC-3248, f. o. b. New Orleans, which the defendant is alleged to have purchased by order from the plaintiff through its agent N. Nigro & Co. That said cars were shipped and left New Orleans on September 20 and September 28, 1926, respectively. Plaintiff also seeks to recover for said account from the defendant bank as guarantor of the payment of same by the defendant.

The defendants, by separate answers filed in the cause, consisting of general and special exceptions and special pleadings, by way of defensive matter to plaintiff's cause of action, alleged that in attempting to fill defendant's order, the plaintiff shipped car IC-58041 by way of the Fort Worth & Denver City Railway Company; that upon arrival of said car it was discovered that the contents were badly chilled; that by reason of the chilled condition of the bananas it was impossible to ripen same, which rendered said bananas unmerchantable and virtually worthless and valueless to defendant Thomas; that said bananas were inferior in quality to those ordered, etc. That the defendant, when it was found that the bananas were in a chilled condition, notified the plaintiff and the carrier thereof; that the defendant undertook to dispose of and sell same as best he could and received therefor $141.50, which represents the gross receipts from the sale of the bananas contained in said car after deducting the freight charges therefrom, and defendant Thomas tendered said $141.50 to plaintiff in full payment for said car, which plaintiff refused to accept, and defendant here and now tenders same to it. The defendant further alleges that he did, on or about the 23d of September, 1926, order from plaintiff, through its agent, N. Nigro & Co., one car of green

bananas, being car NRC-3248, which upon arrival and inspection were found to be blackened in appearance and overripe, and by reason of same being overripe, they were unsalable and could not be disposed of. That defendant thereupon rejected said car and refused to receive them. Further, that there is a general custom and usage among the importers, dealers, brokers, jobbers, wholesalers, and purchasers of bananas in carload lots to the effect that when bananas are purchased by telegraph or otherwise, it is understood and known that the fruit is to be shipped and to arrive at destination in green condition, unless the order for same specifically calls for "turnings," in order that the purchaser thereof may ripen the fruit at his will and in sufficient quantities and at such times as to enable him to profitably sell and dispose of same. That said custom and usage was general and prevalent and has been for a great many years an established custom and usage in the states of Louisiana and Texas. That the defendant Thomas had theretofore and since purchased bananas of the plaintiff company, and said bananas had always arrived at destination in a green condition; that the plaintiff company had knowledge of the existence of such custom and usage and was aware that the defendant Thomas was relying upon the same and ordered and expected to receive the bananas in a green condition upon their arrival at destination. The defendant then pleaded failure of consideration in part as to the purchase of said two cars, also pleading negligence on the part of plaintiff's agent, N. Nigro & Co., in said shipments, in that they caused to be placed too much ice, to wit, 6,000 pounds in car IC-58041 at Dallas, and had too little ice in car NRC-3248. The defendant also pleaded breach of warranty, and further impleaded the Fort Worth & Denver City Railway Company, alleging that it was a necessary and proper party in that as a common carrier for hire, if the bananas were in good and merchantable condition when placed in charge of said railroad for shipment, the said railroad carelessly and negligently caused the bananas to become chilled while in transit to the extent that they were unfit and unsuitable for the purposes for which they were ordered, and prayed that in the event plaintiff recovered judgment against him, he recover against the railroad company a like judgment.

The defendant bank pleaded want of privity of contract between the parties, that their part of the transaction was only "accommodation paper" and wholly without consideration, etc.

The case was submitted to a jury upon special issues, a number of which were given in the court's main charge, and the others were tendered by the defendant Thomas.

In answer to the numerous issues submitted, the jury, in part, found: That the bana-

nas in car IC–58041 were of the kind and character of bananas contracted for when shipped from New Orleans; that the bananas in said car were the kind and character contracted for by defendant Thomas at the time they were diverted at Dallas, Tex.; that the bananas in car NRC–3248 were such as contracted for by defendant Thomas at the time they were shipped from New Orleans; that the bananas in said last-named car were not of the kind and character contracted for by the defendant at the time they were diverted at Dallas, Tex.

The defendant's special issues given by the court were answered by the jury: That N. Nigro & Co. were the agents of the plaintiff at the time of the purchase of said two cars; that the bananas contained in car IC–58041 were in a merchantable condition and suitable for the purpose for which they were ordered when they were delivered to the carrier at Dallas; that the bananas contained in car NRC–3248 were not in a fit and merchantable condition and suitable for the purposes for which they were ordered when they were delivered to the carrier at Dallas, Tex.; that the carrier transported the contents of said car safely to defendant Thomas at Wichita Falls; that N. Nigro & Co. represented to the defendant Thomas before the purchase of said bananas that they were in good and merchantable condition, this as to both cars; that the bananas in car IC–58041 were in merchantable condition when it arrived at Wichita Falls, but that car NRC–3248 was not in such condition on arrival at Wichita Falls; that there was a custom or usage in trade among banana dealers, wholesale and retail, in the states of Louisiana and Texas, that when bananas were ordered in carload lots, they were to arrive green at their destination, and that such custom was known to the plaintiff and its agent; that N. Nigro & Co. did represent to defendant Thomas in their negotiations with them that the bananas in car NRC–3248 were "turnings" and that defendant Thomas ordered "turnings" at the time of the purchase of said car.

The defendant Thomas makes the objection to the court's charge that it fails to submit to the jury a charge on the burden of proof.

■ We cannot consider this question. The motion for a new trial takes the place of assignments of error on appeal to this court, in the absence of formal assignments of error duly filed in the court from which the appeal is taken; but it is nevertheless incumbent on the party appealing to specifically set out the errors complained of in his motion for new trial. This was not done, and we therefore cannot consider the failure of the trial court to submit a charge to the jury on the burden of proof, as such failure does not present fundamental error. Boedefeld v. John-

son (Tex. Civ. App.) 201 S. W. 1027, and authorities there cited.

■ The issues submitted to the jury present a clear case of conflict which, if the issues and answers are material, would result in a reversal of the case, but our view of the question controlling this is: That defendant, having purchased both cars of bananas f. o. b. New Orleans, and the proof, without conflict of evidence, showing that the bananas were of the kind and character ordered by the defendant at the time they were shipped, the shipment was at customer's risk, and if there was any deterioration in the fruit, the loss falls on the purchaser.

■■ It will be understood that the jury found that the bananas in both cars were of the kind and character which the defendant had ordered when placed f. o. b. cars at New Orleans. The fact that the jury also found that at the time car NRC–3248 was diverted at Dallas, the bananas were not of the kind and character contracted for, becomes immaterial under this statement of the rule. If by ignoring the answers of the jury to an immaterial issue and considering their answers to material issues, the court can render a judgment on such material issues answered, such judgment is not rendered non obstante veredicto. While it is said that the trial court has no power to override the verdict of the jury and to render a judgment contrary to that verdict upon any issue in the case, this rule does not apply where the issues considered are immaterial. If the plaintiff was responsible only for the condition of the bananas at the time it delivered them f. o. b. cars at New Orleans, and that any deterioration of the fruit in transit was the purchaser's loss, it certainly could not and should not prevent the trial court from rendering a judgment in plaintiff's favor; the plaintiff having complied with its contract when it placed the fruit f. o. b. cars at New Orleans in a good merchantable condition and of the kind and character ordered. For that reason, the finding of the jury that when the car was diverted at Dallas, it was not of the kind and character of bananas ordered, was immaterial and could be disregarded. It is only when the issue is material that the judgment must conform to the finding. Massie v. Hutcheson (Tex. Com. App.) 270 S. W. 544, 545; Steinberg v. Morgan (Tex. Civ. App.) 300 S. W. 253, 256, and authorities therein cited.

■ The plaintiff's invoice contains "Uniform conditions governing sales" which are as follows: "All bananas and fruit sold in accordance with conditions printed on the back of this bill. Make all checks payable to the order of Gulf Banana Dispatch Co."

On the back of the invoice are the following conditions of sale:

"Unless the contrary is clearly specified in writing every order for bananas or fruit giv-

en to the Dispatch Company shall be understood to contain the request that a messenger be furnished to accompany the bananas or fruit purchased for the benefit of the Purchaser. The Dispatch Company at all times shall have the option of providing such messenger or not. Whenever a messenger shall accompany a car or cars he will be instructed to look after the interests of the Purchasers and accordingly as the agent of the Purchasers will be subject to all instructions of the Purchasers respecting their bananas or fruit respectively. In the absence of such instructions the messenger will conform to the general rules and regulations established by the Dispatch Company and to such special orders as the Dispatch Company may give on behalf of the Purchaser in any case, but in no event shall the Dispatch Company be liable for acts or omissions of the messenger. The receipt certificate or statement of a messenger respecting the amount, quality and condition of the fruit which he is to accompany given in writing and signed by him at the time of shipment at the seaboard shall be conclusive and final as to all matters therein contained upon both the Dispatch Company and the Purchaser.

"The Purchasers shall bear all loss on account of damage or deterioration of bananas and fruit after shipment at the seaboard arising from any cause whatsoever and without altering or affecting this provision the messengers or the Dispatch Company may place any cars of fruit in any storehouse or shelter for the purpose of regulating the temperature or ventilation thereof or for any other purpose and in so doing the Dispatch Company may assume the custody of any bananas or fruit either directly or through instructions to any messenger from the carriers temporarily without any liability to the Dispatch Company for anything that may happen or be done to the bananas or fruit in consequence thereof.

"Special sales may be made after arrival of bananas or fruit at the final destination to purchasers personally inspecting and accepting the same on the spot.

"Every order given to or for the Dispatch Company whether by telephone, telegraph, in writing or otherwise shall be regarded as being made under and subject to the terms and conditions herein contained. Every purchase from the Dispatch Company of bananas or fruit and every sale thereof by it shall be upon and subject to all the terms, conditions and provisions herein contained in every respect unless waived in a writing signed by the President of the Dispatch Company, it being expressly stated and understood that no officer, employee or representative of the Dispatch Company except only the President has any authority to make any contract or sale of bananas or fruit except upon and subject to the said terms, conditions and provisions."

It appears from defendant Thomas' testimony that he had made other purchases from plaintiff and that he was aware of the "conditions of sale" placed on the back of the invoices; that he had received the invoice on car IC-58041; and that the invoice thereon contained the conditions of sale above quoted. This being true, the only question for our consideration is whether or not the fruit had been safely placed f. o. b. cars at New Orleans, and whether or not they had been properly packed and iced at the point of shipment and were of the kind and quality ordered by the defendant Thomas. The evidence shows that all of this was done. Hence the liability of Thomas became fixed when such performance, including the proper packing and icing, was done.

In the case of Dispatch Fruit Co. v. Ellis, 75 W. Va. 52, 83 S. E. 187, the Supreme Court of West Virginia holds that a purchaser who has received a printed copy of the conditions of the sale before making his purchase is charged with notice thereof.

In the case of Adkins-Polk v. John Barkley & Co., 297 S. W. 757, 760, in discussing the legal effect of f. o. b. delivery in the sale of sugar made by sample, the Court of Civil Appeals holds: "The rule is well established that, if the goods are to be shipped to the purchaser, in the absence of an agreement to the contrary, delivery to the carrier is delivery to the purchaser."

See also Battaglia v. Thomas, 5 Tex. Civ. App. 563, 23 S. W. 385, 1118; De Stefano v. Todaro (Tex. Civ. App.) 33 S. W. 390.

For the reasons stated, the judgment of the trial court is affirmed.